FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 JUL 31 AM 10: 40

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

DON R. KICKLIGHTER,       )
                             )
     Plaintiff,        )
                             )
v.                         )     CASE NO. CV206-77
                             )
DAVID HERRIN (Former Sheriff of )
Wayne County), JOHN CARTER    )
(Sheriff of Wayne County), JOE  )
NAIA (Deputy Sheriff of Wayne  )
County), RICHARD DIAL (Georgia )
Bureau of Investigations Agent), )
WILLIAM JENNINGS (Georgia Bureau )
of Investigations Agent),      )
REBECCA LEAR (Georgia Bureau of )
Investigations Agent), MICHAEL  )
MURPHY (Georgia Bureau of      )
Investigations Agent), WALT SHAW )
(Georgia Bureau of            )
Investigations Agent), and JIM  )
TURNER (Georgia Bureau of     )
Investigations Agent),       )
Individually and in their     )
official capacities as law     )
enforcement officers for THE    )
WAYNE COUNTY SHERIFF'S OFFICE   )
and THE GEORGIA BUREAU OF      )
INVESTIGATIONS,             )
                             )
     Defendants.       )
                             )

## O R D E R

Before the Court are the Motions for Summary Judgment
by David Herrin, John Carter, and Joe Naia (the "County
Defendants"), and by Richard Dial, William Jennings,
Rebecca Lear, Michael Murphy, Walt Shaw, and Jim Turner
(the "Georgia Bureau of Investigation Defendants" or the

"GBI Defendants"). For the reasons that follow, the Motion by the County Defendants (Doc. 22) is **GRANTED** and the Motion by the GBI Defendants (Doc. 28) is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND[1]

Plaintiff Don Kicklighter, a former officer with the Wayne County Sheriff's Department who is proceeding pro se in this action, has brought claims pursuant to 42 U.S.C. § 1983 alleging violation of his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. Kicklighter alleges that Defendants procured an illegal search warrant through false statements, misrepresentations, and omissions, and that, while executing the warrant, Defendants unlawfully extended the scope of their search and seizure beyond the limits of the warrant. Kicklighter seeks compensatory damages as a result of these allegations.

The search warrant that underlies these allegations grew out of an incident involving Plaintiff Kicklighter, his wife Mrs. Kicklighter, and Mr. Allen Lee. On August 21, 2003, Mrs. Kicklighter told Mr. Kicklighter that a man had touched her hair at Paige's Convenience Store. There

---

[1] On a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party.

2

were two men standing near Mrs. Kicklighter in the store at that time, Mr. Lee and Mr. Jamie Mainor. Mr. Kicklighter went to the convenience store, reviewed video surveillance, and interviewed witnesses. (Doc. 25, Kicklighter Dep. at 22.) After this investigation, he concluded that Mr. Lee had touched his wife's hair. This conclusion turned out to be incorrect.[2]

After viewing the video surveillance and interviewing witnesses at the convenience store, Kicklighter and another deputy went to Mr. Lee's residence. After Lee became "antsy," Kicklighter used force to detain him and place him in handcuffs on the ground. Id. at 34. Lee contends that during this scuffle, Kicklighter hit him in the back of the head, punched him in the face, and threatened to kill him. Lee was detained in handcuffs by Kicklighter until another deputy arrived to formally arrest him.

In March 2004, Defendant Richard Dial, GBI Special Agent, received a letter from then Sheriff David Herrin requesting that the GBI investigate Lee's allegation that Kicklighter assaulted and wrongfully arrested him. Soon thereafter, Kicklighter was suspended from the Sheriff's Office. The Sheriff's Office requested that he return case

_____

[2] Mr. Mainor was ultimately charged with battery against Mrs. Kicklighter.

files stored at his residence. These files contained information and evidence on drug cases, confidential informants, and various other investigations.[3]

Special Agent Dial investigated the assault allegations against Kicklighter.[4] Defendant Deputy Sheriff Joe Naia told Agent Dial that the Sheriff's Department file regarding the convenience store incident included only an initial incident report and did not contain any other reports, statements, or notations. Deputy Sheriff Naia also stated that the case files that Kicklighter maintained in his office had been removed from the Sheriff's office. Agent Dial interviewed the county solicitor and obtained the evidence that Kicklighter collected relating to the incident at the convenience store, including copies of two written statements and a compact disc (CD) showing video surveillance. The CD contained seven minutes of video footage, and stopped when Mrs. Kicklighter approached the location where the touching allegedly occurred.

Agent Dial then interviewed Plaintiff Kicklighter, who acknowledged that he had collected statements and a

_____

[3] There is some uncertainty as to whether Mr. Kicklighter removed the files from the Sheriff's Office after he was suspended, or whether he was already in possession of these files.

[4] Lee told Agent Dial that Kicklighter had punched him and threatened him.

surveillance CD. He denied assaulting Lee, stating that he only detained Lee in handcuffs until an arresting deputy arrived. Kicklighter stated that he maintained copies of Sheriff's Department files at his home, but that the original files were kept at the Sheriff's office. Kicklighter presented Agent Dial with an additional copy of the surveillance CD, which was also approximately 7 minutes in length and stopped before the alleged hair touching.

Next, Agent Dial interviewed employees at the convenience store. Manager Tara Brantly stated that she did not witness the incident but that she had reviewed the only surveillance recording of it with Kicklighter and given him a written statement. She told Agent Dial that the CD she gave to Kicklighter contained approximately 20 to 30 minutes of footage, and that it included footage of the alleged battery committed against Mrs. Kicklighter.

On April 6, 2004, based on a warrant affidavit describing this investigation, Agent Dial obtained a search warrant from Wayne County Superior Court Judge Stephen Scarlett permitting him to search Kicklighter's home. (Doc. 29, Ex. 1, Dial Aff.) The search warrant, derived from a commonly used template for computer investigations, stated that the items to be searched for and seized included any and all data, files, and logs on computers and

computer systems, and also any "statements, case notes, or other documentation relating to the assault, and subsequent investigation, of Kathy Kicklighter on or about August 21, 2003. . .which has been utilized to violate the Wayne County Sheriff's Office oath of office and to conceal the crime of battery."

On April 7, 2004, the six GBI Defendants, led by Agent Dial, conducted a search of Kicklighter's residence. The County Defendants were not present during the search. The GBI Defendants instructed Kicklighter to wait outside on the porch while the search occurred. According to Kicklighter, Defendants detained him on the porch for several hours. Although the officers told him he was not under arrest, he claims that they also told him that he could not leave. (Doc. 25 at 140-141.)

During the search of the residence, one of the GBI Defendants contacted Deputy Sheriff Naia by radio, and Naia requested that the GBI Defendants seize the Wayne County Sheriff's Department files that were in Kicklighter's possession. A catalog of the seized files was prepared after the search. (Doc. 29, Ex 1-C.) Within these files, Defendants recovered an original, unexecuted disorderly conduct warrant signed by Kicklighter against Lee on November 18, 2003, relating to the incident at the

convenience store.[5]  (Doc. 29, Ex. 1-B.)  The search did not recover a surveillance CD or other electronic data that contained the video footage that was missing from the CD's viewed by Agent Dial.

On October 6, 2004, Kicklighter pled nolo contendere to simple battery on Lee and surrendered his peace officer certification in lieu of a $1,000 fine.

## ANALYSIS

I.   Summary Judgment Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of

---

[5] This was after Mr. Mainor had already been charged with the battery at the convenience store.

an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-588. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply

conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. **Claims Against Defendants in their Individual Capacities**

A. The Search Warrant

Government actors performing discretionary functions are entitled to qualified immunity from civil trials for money damages and may not be held liable in their individual capacity if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). An official asserting the affirmative defense of qualified immunity must initially establish that he was acting within his discretionary authority. See Holloman v. Harland, 370 F.3d 1252, 1263-64 (11th Cir. 2004). A discretionary function includes actions that "are of a type that fell within the employee's job responsibilities." Id.

at 1265.  The Court asks whether the government employee was performing a legitimate job-related function through means that were within his power to utilize.  Id.  In the instant case, because Defendants were obtaining and executing a search warrant as part of their peace officer responsibilities, they were acting within their discretionary authority.

Because the officers were acting within their discretionary authority, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity.  Overcoming the official's qualified immunity defense involves two steps.  First, the plaintiff must establish that the defendant's conduct violated a statutory or constitutional right.  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  Second, the plaintiff must show that the right was "clearly established."  Id.  "Although the first and second inquiries are logically related, the two inquiries must be conducted in the proper order.  [The Court] may not assume an answer to the first question in order to avoid difficult constitutional issues."  Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007).

The Court begins, therefore, by considering whether Defendants violated Kicklighter's constitutional rights by

obtaining and executing the search warrant at issue. Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures." Probable cause to support a search warrant exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location. See United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). This probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances. See Maryland v. Pringle, 540 U.S. 366, 370-71, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003).

Although an officer who acts without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity. "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [the Supreme Court has] indicated that in such cases those officials. . .should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

Thus, in order to be entitled to qualified immunity, an officer need not have had actual probable cause but only "arguable probable cause." Skop, 485 F.3d at 1137. The

facts and circumstances must be such that the officer reasonably could have believed that probable cause existed. See Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995)(stating that "to enjoy qualified immunity [the officer] need only have had arguable probable cause"). Because only arguable probable cause is required, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed. See Hunter v. Bryant, 502 U.S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991). This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause, and it shields from liability "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 349, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)(emphasis omitted).

In the instant case, even taking the evidence in the light most favorable to Kicklighter, the Court finds that the defendant officers had at least arguable probable cause to conduct the search of his residence. The search warrant and the affidavit attached to it describe in detail the course of Agent Dial's investigation. (Doc. 29, Ex. 1.) The five-page affidavit sets forth the specifics of the

alleged battery committed by Kicklighter against Lee. It recounts the evidence collected by Agent Dial and the interviews he conducted with various witnesses. It explains the factual basis for his suspicion that evidence relating to the battery, including the original surveillance CD, was located at Kicklighter's home in connection with other files from the Wayne County Sheriff's Office. Finally, the warrant was issued by a judicial officer of the Wayne County Superior Court. Id. These facts demonstrate that, at the least, the Defendants reasonably could have believed that probable cause existed.

Although Kicklighter maintains that Agent Dial misrepresented facts while applying for the warrant, he offers no evidence to support these allegations. Kicklighter's primary contention appears to be that Agent Dial should have known that Kicklighter did not have a computer or other electronic media equipment at his house. This language in the warrant is merely the stock language from the form which Agent Dial used to create the warrant. Computer related items would be relevant to the investigation of whether Kicklighter altered the surveillance CD from the convenience store in an effort to conceal relevant evidence. But the warrant also sought

"statements, case notes, or other documentation," and this was the type of material that was seized during the search.

Kicklighter also contends that he did not commit battery against Lee, and this appears to be another basis for his allegation that the warrant contained misrepresentations, false statements, and omissions. The warrant, however, specifically notes that Kicklighter denied committing the battery. The arguable probable cause primarily rests on the statements of Tara Brantley, the convenience store manager, who stated that she had provided Kicklighter with the original video surveillance CD and two written statements, neither of which had been produced by Kicklighter during the investigation. Therefore, the Court finds that Kicklighter has not shown evidence of material misrepresentations in the warrant. See Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Because there is no genuine issue of material fact, any claims regarding the insufficiency or invalidity of the warrant are dismissed.

B.    The Scope of the Warrant and its Execution

The Court also finds that the Defendant officers are entitled to qualified immunity with respect to the claim that they seized items outside the scope of the warrant. Kicklighter alleges that the officers exceeded the scope of

the warrant by seizing personal and private property. The "personal" property allegedly seized consists of Sheriff's Department files that Kicklighter had in his possession at his home. With respect to qualified immunity, the controlling inquiry is whether, from an objective standpoint, the officers acted reasonably in relying upon the warrant and in the manner the warrant was executed. Groh v. Ramirez, 540 U.S. 551, 564, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004).

The Court finds that the officers acted reasonably in seizing the files. First, to the extent that documents related to the alleged battery were intermingled within the files, the officers were entitled to seize the Sheriff's Office files that they reasonably suspected contained information described in the warrant. United States v. Wuagneux, 683 F.2d 1343, 1353 (11th Cir. 1982).[6]

Second, the documents seized were copies of files that Kicklighter had removed from the Sheriff's Department during the course of his employment. After Kicklighter was

---

[6] Although an officer may not perform a wholesale seizure for later detailed examination of a mass of records not described in a warrant, an officer is also not required to examine individually each document within a file or bound volume if it "would substantially increase the time required to conduct the search, thereby aggravating the intrusiveness of the search." Compare Wuagneux, 683 F.2d at 1353, with Crooker v. Mulligan, 788 F.2d 809, 811 (1st Cir. 1986).

suspended from the Sheriff's Department, he was directed to return the files on two prior occasions. Kicklighter maintains that these were his personal copies, and that the officers acted improperly in seizing them. However, the inquiry in the qualified immunity context is not whether the officers were actually entitled to seize the files, but whether they acted reasonably in doing so. Groh, 540 U.S. at 564.

In the instant case, it was reasonable for the officers to believe that the Sheriff's Department files were subject to lawful seizure.[7] Kicklighter was storing the files at his residence even though he had been suspended from the Sheriff's Department. Therefore, regardless of whether the officers were actually entitled to seize the these files, the Court finds that they are entitled to qualified immunity because they reasonably believed that the files were the property of the Sheriff's Department and therefore subject to lawful seizure.

Kicklighter also maintains that the GBI Defendants took items of "personal property" during the course of the

---

[7] When an article subject to lawful seizure comes into an officer's possession during the course of a lawful search, he is entitled to seize it even if the article is not within the scope of the warrant. Abel v. United States, 362 U.S. 217, 238, 80 S. Ct. 683, 697, 4 L. Ed. 2d 668 (1960).

search.   The items include a "video tape," "my bills," "letters," "tax returns," "code books," and other "papers." (Kicklighter Dep. at 124-137.)   However, during his deposition, Kicklighter was unable to provide any details as to what was taken, and he repeatedly returned to his generalized allegations that the officers took "papers and stuff."   In several instances, he was unable to state with certainty that the missing items were actually taken by the officers rather than merely misplaced.

Although the officers would not have been entitled to rummage through personal files that were completely unconnected to a lawful search, Kicklighter provides no evidence that that occurred in this case.   To show that the officers acted unreasonably, Kicklighter would need to provide some evidence that a reasonable officer would have known that certain materials were personal in nature and unrelated to the Sheriff's Department files that were also stored at his house.   But he provides no evidence that his personal papers were stored in a separate location from the Sheriff's Department files that were removed incident to the search.   And his generalized allegations that certain papers were missing is insufficient evidence to create a genuine issue of material fact as to whether the officers acted unreasonably.

For these reasons, the Court finds that Defendants are entitled to qualified immunity for the claims alleging that they seized materials outside the scope of the warrant.

C.  Detention During the Search

Kicklighter alleges that the GBI Defendants unlawfully detained him on the porch of his home during the search of his residence.  At his deposition, he testified as follows:

A:  I went outside under armed guard by the Georgia Bureau of Investigations. . . . I was there for several hours, not allowed to leave, made to [sit] there while the Press Sentinel took pictures of me while I'm running for sheriff of Wayne County.  I was not allowed to leave.  I was guarded by armed GBI agents.

. . .

They told me that I could not leave.  They didn't say I was under arrest, but I was, was under arrest because I could not leave and was only allowed to leave when my daddy, a retired captain of the Georgia State Patrol, come up there and says, "Is he under arrest?"  They said no.  He said, "Well, you can't hold him," and he took me into the yard.

. . .

Q:  And so you didn't ask the simple question:  Am I under arrest?

A:  Yes, I did. . . .

Q:  And what was their response?

A:  "You cannot leave." . . . In fact, they would not let my— They arrested my wife, because they would not allow my wife to leave. . . .I had to plead. . .with the GBI agents to get her to leave.  She was outside in her bed clothes.  They wouldn't even let her change clothes till I begged them to let her go in and change clothes and leave.

(Kicklighter Dep. at 139-141.)

Although the Court has held that Defendants had at least arguable probable cause to conduct the search of Kicklighter's home, there is no evidence that they had probable cause to detain him. A person has been "seized" within the meaning of the Fourth Amendment only if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980); United States v. Hammock, 860 F.2d 390, 393 (11th Cir. 1988). Given the length of the alleged detention, the presence of several agents, and the purported statements of those agents, the Court finds that there is a genuine issue of material fact as to whether Kicklighter was unlawfully detained by the GBI Defendants. See Hammock, 860 F.2d at 393 (describing factors to be considered).

The GBI Defendants' only argument in opposition is that Kicklighter's Complaint fails to properly state this claim. Under the Federal Rules of Civil Procedure, a complaint is required to provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In the instant case, the Complaint describes the search of Kicklighter's home and states that "Plaintiff was deprived of his

liberty. . .under the Fourth Amendment."[8]  This is sufficient to allege a claim for unlawful seizure of the person under the Fourth Amendment.  Therefore, the GBI Defendants' motion for summary judgment is **DENIED** on this claim for unlawful seizure.

However, with respect to the County Defendant, it is undisputed that the County Defendants were not present during the search, and that they played no role in the allegedly unlawful detention of Kicklighter.  To impose liability under 42 U.S.C. § 1983, a plaintiff must demonstrate an affirmative causal connection between a defendant's conduct and the constitutional deprivation. LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993). Kicklighter has produced no evidence that the County Defendants caused any deprivation of his liberty. Therefore, the County Defendants' motion for summary judgment is granted as to the claim for unlawful seizure.[9]

---

[8] Plaintiff also alleges that he was deprived of his liberty without due process of law and deprived of equal protection of the laws under the Fifth and Fourteenth Amendments. (Doc. 1 ¶ 17.)  As discussed, his claim for loss of liberty is appropriately brought as a claim for unlawful seizure of the person under the Fourth Amendment.  The alleged facts surrounding the search do not implicate a claim for equal protection.  Accordingly, any claims brought pursuant to the Due Process Clause or Equal Protection Clause are dismissed.

[9] In his deposition, Kicklighter also makes various allegations regarding the involvement of the media.

III. Claims Against the GBI Defendants in their Official Capacities

Kicklighter also brings claims against the Defendant officers in their official capacities. With respect to the claims against the GBI Defendants, the claims should be dismissed. State officials acting in their official capacities are not suable persons under § 1983 for retrospective compensatory relief. Hafeter v. Melo, 502 U.S. 21, 22-23, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). A suit against a state official in his official capacity for monetary damages is tantamount to a claim against the state itself, and is therefore immunized by the Eleventh Amendment. Id. at 25. Because the GBI Defendants are law enforcement officers for the State of Georgia, the Court **GRANTS** summary judgment in their favor on claims against them in their official capacities.

---

However, there is no mention of the media in the Complaint, and the Court is unwilling to extrapolate state law defamation claims from generalized statements in the deposition. With respect to the Fourth Amendment, it is a violation of a person's constitutional rights for the police to bring the media into a person's home during the execution of the warrant. Wilson v. Layne, 526 U.S. 603, 614, 119 S. Ct. 1692, 1699, 143 L. Ed. 2d 818 (1999); United States v. Hendrixson, 234 F.3d 494, 496 (11th Cir. 2000). In the instant case, even if Kicklighter had properly pled a "media ride-along" claim under the Fourth Amendment, he makes no allegation that the Defendant officers allowed the media to enter his home. Any "media ride-along" claim is therefore dismissed.

IV. **Claims Against the County Defendants in their Official Capacities**

A claim against officers of the Wayne County Sheriff's Department is tantamount to a claim against the Sheriff's Department itself. Consequently, the County Defendants also maintain that they are entitled to Eleventh Amendment immunity. They rely on Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003), for the proposition that a Georgia sheriff, in his official capacity, is an arm of the state and that his deputies are therefore protected by the Eleventh Amendment.

In Manders, an arrestee brought a § 1983 claim against a sheriff in his official capacity after he was allegedly beaten by a sheriff's deputy at the county jail. The Eleventh Circuit held that the sheriff was an "arm of the state" in "establishing use-of-force policy at the jail and in training and disciplining his deputies in that regard," and was therefore entitled to Eleventh Amendment immunity. Manders, 338 F.3d at 1319. The Manders decision only considered the narrow function of "establishing use-of-force policy at the jail," and the Eleventh Circuit explicitly declined to decide whether county sheriffs are arms of the state for any of their other specific duties. Manders, 338 F.3d at 1319; Scruggs v. Lee, No. 06-155112007 WL 1745898, *2 (11th Cir. June 15, 2007)(same).

The Eleventh Circuit has not extended <u>Manders</u> to all sheriff functions. <u>See</u> <u>Grech v. Clayton County</u>, 335 F.3d 1326, 1332-35 (11th Cir. 2003)(plurality en banc decision). The Georgia Constitution designates the sheriff as a "county officer," and the Georgia Supreme Court has held that a county sheriff is a separate constitutional entity. Ga. Const. art. IX § 1, ¶ 3(a)-(b); <u>Bd. of Comm'rs of Randolph County v. Wilson</u>, 260 Ga 482, 482, 396 S.E.2d 903 (1990). Therefore, without clear guidance from the Eleventh Circuit, this Court is unwilling to extend <u>Manders</u> and hold that a Georgia Sheriff is an "arm of the state" for the general law enforcement functions at issue in this case.[10]

But to bring a claim against a sheriff in his official capacity, a plaintiff must allege that his rights were violated due to a policy or practice of the department. <u>Skop</u>, 485 F.3d at 1145. A § 1983 claim cannot be premised on a theory of respondeat superior. <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 691-693, 98 S. Ct. 2018, 56 L. Ed. 2d. 611 (1978).

---

[10] The Eleventh Circuit has "not yet decided whether the Eleventh Amendment could provide immunity to a sheriff's deputy." <u>Jordan v. Mosley</u>, --- F.3d ----, n.3, 2007 WL 1574589 (11th Cir. 2007).

In the instant case, the County Defendants were not personally present during the search of Kicklighter's home. The only alleged involvement by these Defendants is a radio call that the GBI Defendants made to Defendant Deputy Sheriff Joe Naia during the course of the search. Kicklighter alleges that the County Defendants "contributed to" the violation of his constitutional rights, because Deputy Sheriff Naia instructed the GBI Defendants to seize the Sheriff's Office files that were in his possession. (Kicklighter Dep. at 138.) But Kicklighter has offered no evidence of "an existing, unconstitutional municipal policy [that] can be attributed to a municipal policy maker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 824, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985). Accordingly, the claims against the County Defendants in their official capacities should be dismissed.

## CONCLUSION

The Motion for Summary Judgment by the County Defendants is **GRANTED** and all claims against them are dismissed. The Motion for Summary Judgment by the GBI Defendants is **GRANTED IN PART** and **DENIED IN PART**. The only claim that survives is Kicklighter's claim that he was unlawfully detained during the execution of the search

warrant in violation of the Fourth Amendment. All other claims against the GBI Defendants are dismissed.

SO ORDERED this _31st_ day of _July_, 2007.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA